BERTHA C. NORRIS, ADMINISTRATRIX, *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

First Judicial District, Hartford, October Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A traveler on the highway, in approaching and attempting to cross a railroad track, is required to act with reasonable prudence in view of all the circumstances.

Whether he did so act or not is a question of fact for the determination of the trier upon all the evidence in the case; and unless its decision violates some rule or principle of law it is final and conclusive.

Evidence that such a traveler did not slacken the speed of his horse, nor, so far as certain eye witnesses could see, look for any approaching train, before attempting to cross the track, while admissible as tending to show negligence, does not necessarily and as matter of law prove it; and therefore the existence of such evidence is not legally inconsistent with a finding that the traveler was free from contributory negligence.

Argued October 3d—decided November 7th, 1905.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, brought to and heard in damages by the Superior Court in Litchfield County, *Case, J.* ; facts found and judgment rendered for the plaintiff for $5,000, and appeal by the defendant. *No error.*

*Donald T. Warner* and *Howard F. Landon,* for the appellant (defendant).

*Caleb A. Morse,* for the appellee (plaintiff).

HALL, J.   The facts found by the trial court, material to the questions raised by this appeal, are these :—

Between one and two o'clock in the afternoon of Sunday, January 21st, 1903, the plaintiff's intestate, Austin H. Norris, was struck and killed at a highway grade-crossing about three hundred feet north of the Burrville station on the Naugatuck division of the defendant's railroad, by the locomotive of a north-bound train.   Mr. Norris, who was a clergyman, was on his way to conduct a religious service at Burrville, a village midway between Torrington and Winsted, the latter being the northern terminus of the Naugatuck division, and was driving from the east, at the rate of six or seven miles an hour, in a top buggy the side curtains of which were down, along a highway which intersects the railroad tracks at the crossing at nearly right angles.   He had lived in that immediate neighborhood for ten years ; had traveled on Sunday during that time ; had for two years immediately preceding the accident crossed the railroad at this point, at this hour, for the same purpose, nearly every Sunday, and was thoroughly familiar with the conditions existing at the crossing.   He was seen just before the accident within two hundred feet of the crossing by persons some distance from him, but was not observed to look either to the north or south as he approached the crossing, and he at no time checked the speed of his horse.   There are places on said highway from a point two hundred feet from the crossing up to within twenty feet of it, where the railroad tracks

on the south may be seen, but these points occur only at intervals and it did not appear that when Mr. Norris was at any of them the position of the train was such that he could have seen it. From the crossing to a point twenty feet east of it, there was an unobstructed view from the highway of the tracks for several hundred feet.

The train by which Mr. Norris was killed was a special passenger train, which left Ansonia at about noon, to enable people from Ansonia and Waterbury to attend a funeral at half-past one of that day at Torrington. The regular Sunday train over the Naugatuck division at this time left Ansonia going north at about nine o'clock in the morning, and reached there upon its return at about six o'clock in the afternoon. No passenger train had ever been known to run on Sunday at the time and place where the accident occurred. Having discharged its passengers at Torrington on its northward trip, at about ten minutes past one, the train continued north from that point with only its crew, consisting of a conductor, engineer, pilot-engineer, fireman and one brakeman, for the purpose of reaching a turn-table at Winsted, which is about ten miles north of Torrington, in order to turn the locomotive and come back to Torrington, so as to leave that place on the return trip south shortly before three o'clock in the afternoon. The engineer in charge of the train, though an engineer of experience on the south part of this division of the road, had never run an engine north of Waterbury, and as there was no available engineer to act as pilot-engineer north of Waterbury, the foreman of motive power, who had run engines at various times before, but had never had a regular run, acted in that capacity. The duty of a pilot-engineer, under the rules of the defendant company, was to control the speed of the engine, give the signals at stations and crossings, and generally to be responsible for the management of the engine so far as the track is concerned. As the train approached Burrville the whistle was blown once for the station, before reaching the whistling-post. The crossing signal of two long and two short blasts was not given, nor was the whistle blown after said station

signal was sounded, nor was the bell rung. The rate of speed of the train at the crossing was about forty miles an hour.

Upon these facts the court found that the defendant was guilty of negligence, to which the death of Mr. Norris was due, and that Mr. Norris was free from contributory negligence.

Among the reasons of appeal, the defendant claims that the trial court erred (1) in rendering judgment for more than nominal damages, upon the facts found, and (2) in not holding that the failure of the plaintiff's decedent to look to see if a train was approaching, or to slacken the speed of his horse, or to take any precautions to ascertain if a train was approaching before attempting to cross the railroad tracks, constituted as a matter of law contributory negligence.

With the facts before us—that the defendant, in order to run a train of empty passenger cars a distance of twenty miles in about two hours, ran it over the crossing in question at a speed of forty miles an hour, without whistling the required crossing signal, or ringing the bell, and at an hour on Sunday when the passing of a passenger train at that place was unheard of—no argument is needed to show that the trial court committed no error in holding that the defendant failed upon the hearing in damages to prove that its employees who managed this train were free from negligence.

Upon the question of contributory negligence, the only ruling made by the trial court was in finding, upon the foregoing facts, that the plaintiff's decedent was free from such negligence, and in rendering judgment for substantial damages. Neither such finding nor such judgment involves a ruling that the exercise of due care by Mr. Norris did not require him to look for an approaching train, nor to take any precautions to ascertain whether a train was approaching, before attempting to cross the railroad tracks. The trial court was not called upon to decide whether the fact that it was Sunday, and that Mr. Norris knew that no

train had ever passed that place near that hour, on that day, relieved him, as a matter of law, from looking to see if a train was coming, or from taking any precautions to avoid being injured by a train that might be approaching, since it was not proved that the deceased did not look to see if a train was approaching, nor that he did not take any precautions to avoid a possible injury.

It is to be remembered that this case was heard in damages, after a default, one of the consequences of which was a prima facie admission by the defendant of the truth of the allegation of the complaint that the deceased was in the exercise of due care at the time of the accident, and the assumption by the defendant of the burden of disproving such allegation. The test, therefore, of the sufficiency of the facts found to support the judgment rendered, is not whether they justify the conclusion that plaintiff's decedent was free from negligence, but whether they prove that he was not. Although the fact that he was not observed to look either way, by persons who saw him from a distance, may have been proper evidence that he did not look, it was not proof that he did not. It is entirely consistent with all the facts found, that the deceased looked as he passed the places where the track could be seen, between the points two hundred feet and twenty feet from the crossing, but failed to see the approaching train because it was not then within the range of his vision, and that he looked and saw the approaching train when he was within twenty feet of the crossing, but was then either unable to stop his horse, or had good reason to think that it would be dangerous to do so, and that he might reasonably have believed under the circumstances that he could cross the track before the train would reach the crossing. In approaching and attempting to cross the tracks he was required to act with reasonable prudence in view of all the circumstances. *Lawler* v. *Hartford Street Ry. Co.*, 72 Conn. 74, 82. The question decided by the trial court, upon this branch of the case, was whether the facts established proved that he did not so act. In holding that they did not, and in rendering judgment for substan-

tial damages, the Superior Court committed no error of law.

There was no error in refusing to find the facts as requested in the defendant's draft-finding.

There is no error.

In this opinion the other judges concurred.